OSBORNE HENDERSON, Defendant in Error, *v.* CHARLES P.
BONDURANT, EDW'D A. CARTER, AND WILLIAM T. GILLIAM,
Plaintiffs in Error.

*Bills and Notes — Endorsement of Note in blank.* — A party who takes a note
signed by the makers and endorsed in blank, with blanks in the body of the
note for the amount for which it was to be filled up, but with figures in the
corner specifying the sum, is thereby notified that the blank may be filled
up for the sum specified in the margin and no more; and is put upon in-
quiry as to the authority of the party offering the note to fill the blank with
any different sum.

*Error to Saline Circuit Court.*

*Adams* and *Shackelford*, for Gilliam, plaintiff in error.

I. The note in dispute is void as to the defendant Gilliam.
It was originally a blank paper with the defendant's name
on the back as endorser, and was intended to be filled up as
a note, with his name as payee and endorser and not as ma-
ker, for the sum of only $200, which sum in figures was
therefore originally inscribed on the left-hand top corner, in-
dicating the extent of the authority given by the defendant
Gilliam—Goodman v. Simonds, 19 Mo. 106; Hall et al. v.
Bk. of the Commonwealth, 5 Dana, 258; Tate v. Hopkins et
al., 7 Mo. 419; Sto. Prom. N. § 10.

II. As the plaintiff took the note with knowledge of the
facts and of the extent of authority given by Gilliam, it would
have been void even if he had taken it in due course of trade
for money advanced; but as he took it on account of a pre-
existing debt due to him from Bondurant, and advanced no
money, he would, without notice of the facts, be subject to
all the equities existing between the original parties, and the
note would be void in his hands as to the defendant Gilliam
—Goodman v. Simonds, 19 Mo. 106.

*J. V. Turner*, for defendant in error.

I. A party signing his name on the back of a note not pay-
able or endorsed to him, becomes a maker—Powell v. Thom-

as, 7 Mo. 440; Lewis v. Harvy, 18 Mo. 74; 1 Pars. on Cont. 206; Schneider v. Schiffman, 20 Mo. 571.

II. The note in question has the same effect against Gilliam as if filled up before he signed it—Sto. Prom. N. § 122; 1 Pars. Cont. 205; 3 Kent, 89; Taylor v. Craig, 2 J. J. Marshall, 461; Chit. on Bills, 313, (9 Am. ed.) n. q.

III. Gilliam, by delivering the paper to Bondurant signed in blank in such form that it was susceptible of being so filled up as to charge himself either as payer or endorser, held Bondurant on to the world as authorized to fill the blank in either way, as he might choose. The rule of law in such case authorized the instrument to be made as favorable to the innocent holder as its character would admit—18 Mo. 80; Broom's Leg. Max. 381.

IV. The allegation that Henderson knew of the alleged understanding between Gilliam and Bondurant being wholly unsupported, he is not affected by such understanding; and the paper having passed into the hands of an innocent holder for value, Gilliam cannot complain of the manner in which the blank was filled—Tumilty v. Bank, 13 Mo. 276; Farmers' Bk. v. Garten, 34 Mo. 119.

V. The simple fact of its being delivered blank implied that the terms of the note were not agreed on, and that the holder was entrusted with authority to fill it up as he thought proper. If Gilliam did not intend to allow Bondurant any latitude, and was only willing to be liable as alleged, he was grossly negligent in not so fixing his liability by filling up the note before parting with it; and he, rather than an innocent holder, should suffer the loss—Tumilty v. Bank, 13 Mo. 285; 2 Term R. 70; Broom's Leg. Max. 456.

VI. The figures in the margin were no part of the note; they had no controlling effect—Payne v. Clark, 19 Mo. 152, and authorities there cited.

WAGNER, Judge, delivered the opinion of the court.

Plaintiff brought his suit against the defendants on a note for the sum of two hundred and fifty dollars. The note is

payable to plaintiff, signed by Charles P. Bondurant and Edward A. Carter as makers, and endorsed in blank on the back by the defendant William T. Gilliam. The suit is instituted against all the defendants as makers of the note.

Bondurant and Carter filed no answer, and judgment by default was taken against them. The defendant Gilliam filed an answer, in which he substantially states, that Bondurant, who is the principal, brought to him a blank piece of paper, signed by Bondurant and Carter on the lower right-hand corner, and with the figures $200 on the upper left-hand corner; that Bondurant procured his endorsement on the back of the paper for the purpose of negotiating the same in one of the banks at Glasgow; that the figures $200, on the left-hand corner, indicated that the same was to be negotiated for two hundred dollars and the note filled up for that amount, he (Gilliam) to occupy the position of endorser; that he had no interest in the note or the proceeds, but only endorsed the same for the accommodation of Bondurant; that Bondurant took the blank note thus signed and endorsed, with the figures at the top, to Glasgow, and tried to negotiate the same in the banks at Glasgow, but did not succeed; that Bondurant was owing a precedent debt to the plaintiff for about three hundred dollars, and, having failed to obtain a discount in the banks, he took the blank note with the figures $200 on the same and with defendant's endorsement on the back, and proposed to deliver the note to plaintiff in payment of the precedent debt to the extent the figures indicated, and to pay the balance in money, but that on examination of the amount due plaintiff from Bondurant it was found that Bondurant had not enough money to pay the balance, and that it was arranged between plaintiff and Bondurant to make the note for two hundred and fifty dollars instead of two hundred dollars, and that Bondurant himself (or the plaintiff with his consent) altered the figures $200 and made them $250; that defendant was not present at the time, and was never notified of the alteration and never consented to the same; and that Bondurant at the

time of the negotiation with plaintiff informed him that he had obtained the endorsement of defendant on the paper to be negotiated in the banks, or one of them, for two hundred dollars, but that he did not succeed.

Upon the trial of the cause before the court without a jury, Bondurant was sworn as a witness for the defendant, and testified to the facts, substantially as set out in the answer, as to the manner of procuring the defendant's endorsement, and the mode in which the note was to be negotiated and discounted. He also stated that failing to get the note discounted in bank, he delivered the same to plaintiff in payment of two hundred and fifty dollars, and took up a note for a previous debt for three hundred dollars, paying the balance of $50 in money; that the figures $200 were in his handwriting, and were on the note at the time he was negotiating it with the plaintiff; did not recollect who altered the figures from $200 to $250, but thought it was done by his consent; did not remember who filled up the written portion of the note at two hundred and fifty dollars, nor that he told plaintiff the understanding concerning the note between him and defendant when he received defendant's endorsement; defendant was not present when the alteration was made.

Defendant then proved that it was the custom at the banks for blank notes to be presented for discount with the signature of the parties at the right-hand corner and endorsed by others on the back, and with the figures for the amount for which the discount is wanted on the left-hand corner of the face; that the figures on the face indicate the amount for which the note is to be filled up, and that the endorsement of the signature on the back of the note indicates that the party signing on the back is to be bound as endorser, and the note is filled up to him as payee.

The court gave certain declarations of law, which it is unnecessary here to notice, and then found for the plaintiff.

Judge Story says, "it is very common for persons to sign their names in blank to a paper, for the purpose of having a

promissory note written over it; and in such a case, the note, when written, will bind the party, if done by a person properly authorized, in the same manner, and to the same extent, and from the same time, as if it had been originally filled up before the signature was made"—Sto. Prom. N. § 10. Where a person holds a negotiable note, *bona fide*, for value, an endorser who endorsed it in blank will not be allowed to set up as a defence that he endorsed the note with the understanding that it was afterwards to be filled by the maker with a certain amount, and that the maker filled the note with a much larger amount than was agreed upon. —Tumilty v. The Bank, 13 Mo. 276; Farmers' Bk. v. Garten, 34 Mo. 119.

In the case of Russell v. Langstaff, Doug. 514, the plaintiff, when he took the notes, knew that they were blank at the time of the endorsement, and were afterwards filled up by Galley, the maker,—Lord Mansfield says, "the endorsement on a blank note is a letter of credit for an indefinite sum. The defendant said, 'trust Galley to any amount, and I will be his security.' It does not lie in his mouth to say the endorsements were irregular."

But this rule only applies where the transaction has been carried on in good faith, and the holder or endorsee has received the paper for value, and has not been guilty of lâches or negligence. If he is informed of the breach of trust or confidence committed by the maker, or there are circumstances of suspicion which ought to place a prudent man on his guard, or induce him to make inquiry, he will not be protected by invoking the above principle. Thus in the Mahaive Bk. v. Douglass, 31 Conn. 170, the defendent endorsed a blank bill of exchange, from which the holder, who had previously signed it as drawer, erased most of the former part, and then wrote over his own name a negotiable note payable to the defendant's order, and got it discounted as an endorsed negotiable note at the Mahaive Bank, which was the plaintiff in the case, and the court held that the bank was bound at its own risk to scrutinize it, and to ascertain

whether the defendant authorized such a change. There was enough, it was decided, to put the bank on its guard; and if it trusted to the representations of the holder, it was at its own risk.

Lovett v. Adams, 3 Wend. 380, decides that where a bond was executed by nine persons as obligors upon certain terms and conditions, and subsequently delivered by five of the obligors without the knowledge or consent of the remaining four upon terms and conditions different from those originally stipulated, that it was not obligatory upon the latter. And in Hall et al. v. Bk. of the Commonwealth, 5 Dana, 258, it was held that when the note was delivered to the plaintiff with the sum and date placed on the top or margin, with the expectation or intention that he would insert the same sum and date in the body, but that he tore them off and inserted a different sum and date, without authority, the plaintiff could not recover.

In the case here the endorsement was in blank, but the amount for which the note was expected and intended to be filled up was in the corner and margin of the note; that was an authority for filling it up for that sum, and no more. The plaintiff when he took the note, and had it filled up for a different amount, was apprised of this fact, or at least had such knowledge as was sufficient to put him on his guard and make it necessary that he should make further inquiry; and when he persisted in taking it with the facts apparent on the face of the writing, he acted at his own risk.

The law was not properly declared in the court below, and its judgment is reversed and the cause remanded. The other judges concur.